IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Case No. 06-511-KI |
| ) | |
| vs. ) | OPINION AND ORDER |
| ) | |
| GREGORY ALLEN WHITE, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

Karin J. Immergut
United States Attorney
District of Oregon
Kathleen L. Bickers
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2024

    Attorneys for Plaintiff

Page 1 - OPINION AND ORDER

C. Renee Manes
Assistant Federal Public Defender
Federal Public Defender's Office
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204-3228

    Attorney for Defendant

KING, Judge:

Defendant Greg Allen White[1] is charged with one count of Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and one count of Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). The evidence against him was collected during the execution of a search warrant. Before the court is Greg White's Motion to Suppress Physical Evidence and to Dismiss Indictment after Suppression (#17). For the reasons below, I deny the motion.

## FACTS

The police served a search warrant at the residence of codefendant Darell DuWayne White in Hermiston, Oregon at 2:30 AM on the morning of September 14, 2006. The house is a single-family dwelling. The officers forced the front door open and started to secure the residence.

Officer Jackson led the team into the house. He headed to the left and kicked a bedroom door open with one kick. The door had no doorknob on it. Officer Jackson does not believe the door was locked because it appeared to be slightly open. Officer Hall, who entered next, is not sure if the door was locked or not. Officer Jackson saw Greg lying on the bed in sleeping attire.

---

[1] I will refer to defendant Greg Allen White and codefendant Darell DuWayne White by their first names to avoid confusion.

Page 2 - OPINION AND ORDER

Officer Jackson told Greg numerous times that they were the police executing a search warrant and that Greg would not be harmed if he did not resist.

Officer Hall began moving toward Greg to handcuff him. Greg began yelling loudly and uncontrollably. Officer Hall tried to take control of Greg but Greg pulled away, slid off the end of the bed, and reached underneath it. The officers were concerned that Greg was reaching for a weapon. Officers Hall and Jackson told Greg to remove his hands from under the bed but Greg did not comply. Officer Hall hit Greg in the head several times to force him to comply with the orders. The struggle continued with the officers trying to break Greg's grip on the bed frame. Greg bit Officer Hall on the thumb but was eventually subdued. Officer Jackson also received a minor cut on his hand.

Although some of the officers knew Greg, they did not know that he was living in the house with Darell at the time of the raid. Some of the officers knew that Greg took part in Darell's drug sales. One officer knew that Greg had lived at the house as recently as four or five months earlier but the officer had been told that Greg moved out. Greg's bedroom was an ordinary one without any kitchen facilities. The house had a single shared bathroom and kitchen.

Once Greg was secured, the officers found a loaded gun in a dresser in his bedroom. A rifle was under his bed. Methamphetamine, scales, and drug packaging materials were also found in the house.

///

///

Page 3 - OPINION AND ORDER

## DISCUSSION

I.  <u>Particularity of the Warrant</u>

Greg contends that the warrant, which he characterizes as allowing a search of anyone and everyone, anything and everything, is a general warrant prohibited by <u>Ybarra v. Illinois</u>, 444 U.S. 85 (1979).

The warrant authorized the search of a "private residence, vehicles and persons located at 630 NE 4th St., Hermiston, Umatilla County, Oregon." Mot. to Suppress Physical Evidence and to Dismiss Indictment after Suppression Attach. at White0025.[2]  The house is described in detail and the items to be seized are listed.  The affidavit supporting the warrant explains that a confidential reliable informant ("CRI") witnessed Darell selling methamphetamine.  The CRI had also been at the residence with Darell on several occasions.  The affiant knew that Darell lived at the residence from previous information and contacts, plus confirmation from the electric company that power for the residence is in Darell's name.

The affidavit also states in part the following:

> Further, when search warrants are served, persons other than the known occupants of the residence are frequently present.  It has been my experience that these people, referred to as John and Jane Does, are often in possession of controlled substances, have just made drug transactions, or are present for the purpose of delivering narcotics.  On several occasions, I have found wanted persons at the locations where controlled substances are being sold when search warrants are being served.  Since narcotics traffickers are very secretive about their activities, it has been my experience that people who are present, or who arrive at a location being searched for evidence of drug offenses are, either as co-conspirators, fugitives, or frequenters, involved in criminal conduct themselves.

---

[2] The pages are not numbered but have been Bates-stamped.

> I have also found that persons coming to the location to purchase or deliver drugs often conceal such controlled substances on their person, or inside vehicles on or near the property. I know through training and experience that controlled substances, such as methamphetamine, can be concealed in small containers as small as bindles 1" by 1" and the thickness of two sheets of paper and that these packages are often concealed on the persons of those present. As part of the investigation, it is necessary to identify these John and Jane Does, and to search their persons and vehicles to determine if they are fugitives, co-conspirators in this case, or if they are involved in the crime of possession or delivery of controlled substances. It is also necessary to identify these John and Jane Does, and to search their persons and vehicles to determine if they are involved in the crime of frequenting a place where controlled substances are kept, used, or maintained.

Id. at White0015-0016.

In Ybarra, the search warrant authorized the search of a tavern and a particular bartender, who was identified by name and description, for evidence of the possession of a controlled substance. The warrant's supporting document stated that 15 to 25 tin-foil packets, such as were used to package heroin, were seen on the bartender and in a drawer behind the bar on at least ten occasions by an informant who was familiar with heroin packaging through his former use of the drug. When the officers executed the warrant, they patted down all customers present and found heroin on defendant Ybarra. Id. at 87-89. The Court suppressed the heroin found on Ybarra because the warrant did not establish probable cause that anybody at the tavern except the bartender would be violating the law. In particular, the warrant did not establish that the tavern was frequented by people illegally buying drugs. Id. at 90-92.

The warrant before me differs from the one in Ybarra by its detailed explanation of the affiant's experience with criminal violations committed by people present at residences where searches are conducted for controlled substances. The Ybarra warrant gave no reason why a customer at the tavern might be doing something illegal. The distinction between a private

Page 5 - OPINION AND ORDER

home, as before me, and a commercial establishment open to the public, as the tavern in Ybarra, is crucial.  As the affiant before me explained, the secretive nature of narcotics traffickers results in other people present at the residence also typically being involved in the use or sale of controlled substances.  The same would not be true for customers at a tavern, most of whom would be there for a drink or a meal.  Any other assumption would have to be based on contrary information specific to the tavern, which was not provided in the Ybarra warrant.

The law does not require exclusion of evidence found while officers are rightfully searching a location under a properly issued warrant, even if the evidence supports charges for a related crime or against a suspect "not expressly contemplated in the warrant."  United States v. Adjani, 452 F.3d 1140, 1151 (no need to exclude evidence implicating a woman when the evidence was found on her computer and the woman lived with the primary suspect but was only mentioned in the warrant's affidavit as participating with the suspect in possibly innocuous activities) (9th Cir.), cert. denied, 127 S. Ct. 568 (2006).  That is what happened here.  The warrant provides probable cause to search other people found at the residence as well as all parts of the residence.

II.     Authority to Search Bedroom

Greg argues that he was a resident of the house with his own locked bedroom.  He contends that his privacy rights required the officers to get his consent or a valid warrant to search his bedroom.  Greg argues that this was particularly true once the officers realized that he was a resident in his own locked bedroom.

The government contends that it had a valid warrant for a single-family dwelling which extended to the entire residence, based on the information known to the officers prior to entering

Page 6 - OPINION AND ORDER

the house.  The government argues that all family members typically have common authority over all rooms of a family residence.  Additionally, a warrant is valid, notwithstanding that it was based on the alleged illegal activities of only one of several occupants of a residence.  The government asserts that officers do not need to stop the search of a single-family dwelling to obtain additional warrants if the officers encounter additional people who might have a privacy interest in common areas or in individual rooms in the residence.

A warrant authorizing the search of a single street address with several dwellings is valid if defendants are in control of the whole premises, if the dwellings are occupied in common, or if the entire property is suspect.  <u>Mena v. City of Simi Valley</u>, 226 F.3d 1031, 1038 (9th Cir. 2000).

> Police officers' authority to search premises that are described in a warrant is not unlimited.  "If, during the search, the officers become aware that the warrant describes multiple residences, the officers must confine their search to the residence of the suspect."  <u>United States v. Kyles</u>, 40 F.3d 519, 524 (2d Cir. 1994) (citing <u>Maryland v. Garrison</u>, 480 U.S. 79, 86-87, 107 S. Ct. 1013 (1987)).  To determine whether the officers should have realized they were searching the wrong residence, the <u>Garrison</u> court set forth the following standard:  "[T]he validity of the search of respondent's apartment pursuant to a warrant authorizing the search of the entire third floor <u>depends on whether the officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable</u>."  <u>Garrison</u>, 480 U.S. at 88, 107 S. Ct. 1013 (emphasis added).

<u>Id.</u>  In <u>Mena</u>, the court concluded that a jury could find that search was unreasonably overbroad based on the officers' observation that many of the rooms were padlocked from the outside, and that after forcing entry the rooms were set up as studio apartments with their own refrigerators.  <u>Id.</u> at 1039.

Here, the officers had no knowledge that Greg still lived in the home because they had heard that Greg moved out.  There is no evidence that Greg paid rent.  There is no evidence that the bedroom door was locked.  The officers knew that Greg and Darell were father and son.  On

Page 7 - OPINION AND ORDER

entry, the house appeared to be a typical single-family residence with two bedrooms and a common living room, kitchen, and bathroom. There is no evidence that either man excluded the other from a bedroom.

I can only conclude that nothing would have tipped off the officers that the dwelling was occupied other than in common, or that the dwelling contained multiple residences. Consequently, the officers acted objectively reasonably when they did not conclude that searching the bedroom in which Greg was found would have been based on an overbroad warrant. Thus, the search was valid.

I agree with the government that Greg's argument concerning whether he is responsible for contraband found in the bedroom in which the officers located him is not the issue here and will ultimately be decided by the jury.

For these reasons, I deny the motion to suppress.

## CONCLUSION

White's Motion to Suppress Physical Evidence and to Dismiss Indictment after Suppression (#17) is denied.

IT IS SO ORDERED.

Dated this \_\_\_\_23rd_____ day of July, 2007.

                                          /s/ Garr M. King
                                          Garr M. King
                                          United States District Judge